**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KELLY RESOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-06-702-R |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, Ms. Kelly Resor, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of Defendant Commissioner's final decision denying Ms. Resor's application for supplemental security income (SSI) benefits. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded.

**I.   The Administrative Decision**

The Administrative Law Judge (ALJ) issued his decision on September 12, 2005, and found Ms. Resor not disabled. AR 13-20. Following the five-step sequential evaluation process, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005), the ALJ found at

---

[1] Michael J. Astrue became Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is hereby substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

step one that Ms. Resor had not engaged in substantial gainful activity since her alleged disability onset date of September 1, 2001. AR 14, 19. At step two, the ALJ determined that Plaintiff's mental impairment is "not severe" (AR 16-17, 19), but he did determine that Ms. Resor suffers from "mechanical low back pain" and that this impairment is severe within the meaning of the Social Security regulations. AR 17, 19. At step three, the ALJ determined Ms. Resor's severe impairment does not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17, 19.

The ALJ next determined that Ms. Resor has the residual functional capacity to lift no more than 20 pounds, frequently lift or carry 10 pounds, walk or stand 6 hours out of an 8-hour day and sit "most of the time" with some pushing and pulling of arm or leg controls. Based on this residual functional capacity, the ALJ determined Ms. Resor could perform "sustained work activity at the 'light' physical level of exertion." AR 18, 19. At step four of the sequential evaluation process the ALJ determined that Ms. Resor could return to her past relevant work as a waitress/bartender and worm packer. AR 18, 19. Therefore, the ALJ determined Ms. Resor was not disabled. AR 13, 19, 20.

Ms. Resor appealed the ALJ's decision to the Appeals Council, and the Appeals Council denied her request for review, AR 4-7, making the ALJ's decision the final decision of the Commissioner.

## II.     Issues Presented for Judicial Review

Ms. Resor presents the following issues for judicial review: (1) the ALJ erred by failing to recognize all of Ms. Resor's diagnosed impairments as severe; (2) the ALJ erred by formulating a residual functional capacity assessment that did not include all of Ms. Resor's limitations; and (3) the ALJ made an improper credibility analysis.

## III.    Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* 331 F.3d at 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but does not reweigh the evidence or substitute its own judgment for the Commissioner's. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**IV.	Analysis**

Ms. Resor filed her application for benefits on May 12, 2004, and alleged she had been disabled since September 1, 2001. Treatment records from Ms. Resor's treating physician, W.E. Clymer, DO, cover the time period March 1997 through June 2001, prior to Ms. Resor's alleged onset date. AR 90-97. Ms. Resor's "new patient" evaluation in March 1997 includes a diagnosis of migraines and situational anxiety related to "getting through" a divorce. AR 96. She was prescribed Lortab for the migraines and Xanax for "flashes of anxiety." *Id.*

In August 1997, Ms. Resor underwent surgery to remove a fibroid tumor in her uterus. AR 95. In January 1998, Ms. Resor continued to be treated for migraines and also received medication for insomnia. AR 94. Suggesting possible addiction problems, the treatment records reflect Ms. Resor voluntarily agreed to give up Xanax and to work towards a non-narcotic pain medication in lieu of the Lortab. *Id.* Ms. Resor was prescribed Ambien for her insomnia. *Id.*

Treatment records in February 1998 indicate "tremendous progress tapering her medication." AR 93. However, the records reflect she continued taking Xanax and Lortab through February 1999. AR 92-93.

In March 1999, Ms. Resor continued to be diagnosed with anxiety disorder. Treatment records state: "[w]e will taper her off the Xanax once and for all." AR 92. Ms. Resor was then prescribed Elavil, an antidepressant medication. *Id.*

In July 1999, Ms. Resor was diagnosed with acute lumbosacral strain resulting from a fall. AR 92. From September 1999 through June 2001 – the last treatment records for Dr. Clymer – Ms. Resor continued prescriptions for Lortab and Xanax. Dr. Clymer states in treatment records dated February 2000 that Ms. Resor is a personal friend and therefore, that he does not "document every refill in her chart, nor does she have to present every single time." AR 91. The last treatment record from Dr. Clymer dated June 2001, includes a diagnosis of mechanical low back pain. AR 91. At that time she was prescribed Atarax for sleep and given five refills. AR 90.

In March 2001, Dane Nielsen, a licensed professional counselor, conducted a neurobehavioral status exam and a psychiatric diagnostic interview. AR 71-73. Mr. Nielsen notes that Ms. Resor had been prescribed Lortab and Xanax for her migraine headaches and nervousness, "eventually becoming dependent o[n] them." AR 72. He further notes that Ms. Resor had "weaned herself off both after being arrested for a DUI last year." *Id.* Mr. Dane reported that Ms. Resor was "unable to hold a thought for an extended period of time," "appeared anxious throughout the interview," and that her conversation was "not in a sequenced order but scattered." Mr. Dane found "[r]ecent, remote and long term memory are impaired." *Id.* Mr. Dane's diagnosis was cognitive disorder, NOS[2], post-traumatic stress disorder,[3] migraine headaches, scoptopic sensitivity, problems with primary support group,

---

[2] Not otherwise specified.

[3] Ms. Resor's history, as described in Mr. Dane's report, includes serious physical and emotional traumas occurring in both childhood and adulthood. *See* AR 71-72.

education problems, occupational problems and a GAF of 50 with serious problems in social and occupational functioning. *Id.*[4]

In April 2001, Lynda Crooms, a counselor with the Lawton Career Planning Center, conducted career counseling testing. She determined that Ms. Resor has significant deficits in reading and math and recommended vocational objectives as nail technician, dog groomer or veterinary technician. AR 76-77.

In July 2001, Jana Lynch, Ph.D., a licensed psychologist, conducted a psychological evaluation of Ms. Resor upon referal from Lynda Crooms.  Dr. Lynch's diagnosis was cognitive disorder, NOS, post-traumatic stress disorder, developmental reading disorder, sexual abuse as a child, cocaine abuse by history, migraine headaches and "occupational difficulties, financial stress, survivor of physical, sexual and emotional abuse." AR 101. She assigned Ms. Resor a GAF of 55.[5]

There are no medical records for the time period following this evaluation until the agency psychological evaluation three years later in August 2004. AR 102-109. The evaluation was conducted by Leon Morris, Ed.D, a clinical and forensic psychologist. Mr. Morris's diagnostic impression was malingering, alcohol and cocaine dependence (sustained

---

[4]The Global Assessment of Functioning (GAF) is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning" at the time of evaluation. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) ("DSM") at 30-32. "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job. Id. [at 34]." *Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004).

[5]A GAF rating between 51 and 60 indicates moderate symptoms or impairments in social, occupational or school functioning. *See* DSM at 32.

6

full remission) and personality disorder NOS.  Mr. Morris deferred assigning a GAF due to suspected malingering.  Mr. Morris states: "[t]he claimant appears to be a rather antisocial person who appears to be malingering symptoms of mental disorders in an apparent attempt to obtain SSI benefits."  He continues: "[h]er vocational motivation is rather questionable, and it is doubtful that she would derive significant benefit from mental health treatment at this time."  AR 107

One month later in September 2004, Dr. Steven Miller completed a Psychiatric Review Technique (PRT) form.  AR 111-124.  He concluded Ms. Resor has no severe mental impairment and no functional limitations.  *Id*.  In his "consultant's notes" Dr. Miller states that it is "difficult to assess [claimant's] mental functioning due to malingering."  AR 123.

In November 2004, Carolyn Goodrich, Ph.D. completed a PRT form.  AR 125-138.  She also determined Ms. Resor's mental impairments were not severe.  AR 125.  Dr. Goodrich determined Ms. Resor had mild functional limitations as to restrictions in activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace.  AR 135.

Both Dr. Miller and Dr. Goodrich relied on the psychological evaluation completed by Mr. Morris in support of the PRT findings that Ms. Resor's mental impairments were not severe.  AR 123, 137.

The record includes a letter from Jack D. Norrell, LSCW, LMSW-AP, dated June 10, 2005.  Mr. Norrell states that Ms. Resor received three counseling sessions between January 2002 and April 2002.  He reports that her "mental status exam showed her to be appropriately

functioning at that time" and that she "scored well on a Mini Mental State." AR 142. He noted Ms. Resor was seen as having a generalized anxiety disorder but that "there was not sufficient long-term or consistent contact with her to adequately formulate a complete diagnostic impression." *Id*.

Additional records indicate treatment for "psychological impairment" following the ALJ's September 12, 2005, decision. A letter dated October 20, 2005, from Jennifer Snider of Ozark Guidance states that Ms. Resor has "been in services" since September 29, 2005, and "will receive care indefinitely due to psychological impairment from past experiences." AR 148. Her diagnosis included bipolar disorder NOS, post-traumatic stress disorder, dependent personality disorder and panic disorder with agoraphobia. AR 157. Ms. Resor was given a GAF of 40.[6]

### A.     The ALJ's Step-Two Finding

Ms. Resor first claims the ALJ erred in finding at step-two that she did not suffer from a severe mental impairment. Specifically, Ms. Resor claims the ALJ failed to discuss the evaluations by Jana Lynch and Dane Nielsen that she contends conflict with the ALJ's finding of a non-severe mental impairment.

---

[6]A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *See* DSM at 32.

Ms. Resor does not claim error based upon this additional evidence before the Appeals Council. As set forth below, because a remand is required, the ALJ should consider this additional evidence and discuss the appropriate weight to be given this evidence.

A claimant bears the burden at step two to present evidence that she has a medically severe impairment or combination of impairments. A severe impairment is one that significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.921. Basic work activities include: understanding, remembering and carrying out simple instructions, use of judgment, responding appropriately to supervision, co-workers and the usual work setting, and dealing with changes in a routine work setting. *Id*. Step two requires only a *de minimus* showing of a severe mental impairment. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005).

The ALJ based his step-two finding on the psychological evaluation of Ms. Resor conducted by Leon Morris on August 31, 2004, and the two PRTs completed by agency psychologists Stephen Miller and Carolyn Goodrich in September 2004 and November 2004, respectively. Relying heavily upon Dr. Morris's finding that Ms. Resor was malingering, the state agency psychologists concluded Ms. Resor's mental impairments were not severe. AR 123, 137. The ALJ also relied upon the letter from Jack D. Norrell of Interactive Counseling and Psychotherapy dated June 10, 2005, despite the fact that Mr. Norrell states that the contact with Ms. Resor was not sufficient to formulate a complete diagnostic impression.

Ms. Resor contends that the ALJ erroneously failed to discuss or even reference the psychological evaluations completed by Jana Lynch and Dane Nielsen. The GAF scores and evaluations from these individuals indicate Ms. Resor's mental impairments are severe for purposes of the step-two determination. Significantly, the PRTs of the agency consultants make no reference to these evaluations.

It is well-established that the ALJ must discuss the evidence supporting his decision and "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Grogan*, 399 F.3d at 1266 (citation and internal quotations omitted). Without analysis of the evaluations completed by Jana Lynch and Dane Nielsen, the ALJ's step-two finding is legally deficient and a remand is required.[7]

Moreover, the ALJ failed to explain why he gave greater weight to the opinion of the nonexamining state-agency consultants, nor did he explain the apparent inconsistency between these opinions and the other medical evidence of record. *See* 20 C.F.R. § 416.927(d)(1) (providing that more weight generally is given to examining sources than nonexamining sources). *See also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.") (citations omitted). On remand, if there is still a conflict between the opinions of non-examining and examining consultants, the ALJ must give adequate reasons if he again rejects the latter in favor of the former.

---

[7]The ALJ also wholly failed to discuss the evidence of Ms. Resor's mental impairments as evidenced in the records of her treating physician, Dr. Clymer. Although Dr. Clymer treated Ms. Resor prior to her alleged onset date, the ALJ relied upon Dr. Clymer's treatment records to find Ms. Resor suffers a severe physical impairment but ignored that aspect of the records dealing with her mental impairments. In seeking a remand at step two, Ms. Resor has not specifically raised a claim that the ALJ erred in failing to conduct a proper treating physician analysis. *See* 20 C.F.R. § 416.927(d)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). She does allege a violation of the treating physician rule in challenging the ALJ's residual functional capacity determination. On remand, however, the ALJ is reminded that failure to conduct a proper treating physician analysis constitutes legal error. *Watkins*, 350 F.3d at 1300.

### B.     The ALJ's Residual Functional Capacity Determination

Ms. Resor challenges the ALJ's residual functional capacity determination because the ALJ failed to include any mental limitations. As set forth in relation to Ms. Resor's first claim of error, the ALJ's step-two finding that Ms. Resor does not suffer from a severe mental impairment is legally deficient. The ALJ did not discuss all of the pertinent evidence of record regarding Ms. Resor's mental impairment. In addition, the ALJ failed to discuss the weight, if any, given to the treatment records of Dr. Clymer, Ms. Resor's treating physician. *See supra*, footnote 7. The ALJ's lack of analysis requires a remand for further evaluation of Ms. Resor's residual functional capacity. *Compare Haga v. Astrue*, ___ F.3d ___, 2007 WL 970157 (10th Cir. April 3, 2007) (for publication) (ALJ's failure to explain reasons for accepting only certain mental residual functional capacity limitations and not others required remand). On remand, the ALJ should explain the evidentiary basis for his residual functional capacity determination and his reasons for rejecting pertinent evidence in the record regarding Ms. Resor's mental impairments.

### C.     The ALJ's Credibility Determination

As her final claim of error, Ms. Resor challenges the ALJ's credibility determination. In summarizing Ms. Resor's testimony, the ALJ noted that she reported anxiety, depression, panic attacks, migraine headaches, stuttering and mood swings. AR 17. In addition, the ALJ noted Ms. Resor's testimony that she was unable to read or make change and that she had been terminated from most jobs due to anxiety attacks. AR 18.

The ALJ wholly rejected this testimony by failing to incorporate any mental limitations in his residual functional capacity determination. In support of rejecting Ms. Resor's subjective complaints related to her mental limitations, the ALJ relied upon objective medical evidence of record, Ms. Resor's lack of regular medical treatment, possible medication seeking behavior and evidence of malingering. AR 18.

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Nevertheless, a court may review an ALJ's credibility findings to ensure that the ALJ's factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett*, 395 F.3d at 1173 (quotation omitted). Here, the ALJ stated he relied upon the "objective medical evidence" as grounds for rejecting Ms. Resor's credibility. Yet, as discussed in relation to Ms. Resor's other claims of error, the ALJ did not conduct a proper analysis of the objective medical evidence of record. Instead, the ALJ impermissibly relied on evidence favorable to the disability determination while failing to discuss contrary probative evidence. *See Robinson*, 366 F.3d at 1083 ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."). A remand, therefore, is required.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## **NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by June __4th__, 2007. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __14th__ day of May, 2007.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE